UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>      Plaintiff/Counterclaim Defendant,<br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>      Defendant/Counterclaim Plaintiff. | Case No.:  2:12-cv-01328-GMN-CWH<br><br>**ORDER AND FINAL JUDGMENT** |

The Court held a hearing on August 20, 2015 on the motion of Plaintiff Scottsdale Insurance Company ("Scottsdale") to request findings of fact and recertification to Nevada Supreme Court (ECF No. 72), and on the parties' cross-motions for summary judgment (ECF Nos. 38 and 61).  The Court announced its ruling from the bench on those motions, granting the motion for summary judgment of Defendant Liberty Mutual Insurance Company ("Liberty Mutual") (ECF No. 38) and denying Scottsdale's motion for recertification to the Nevada Supreme Court (ECF No. 72) and Scottsdale's motion for partial summary judgment (ECF No. 61).

This Order and Final Judgment summarizes the Court's rulings at that hearing.

**Scottsdale's motion to request findings of fact and recertification to Nevada Supreme Court (EFF No. 72)**

The Court entered its "Order Certifying Question of Law to the Nevada Supreme Court" on October 9, 2014 (ECF No. 68).  In response, on December 16, 2014 the Nevada Supreme Court entered an "Order Declining Certified Question."  *See Scottsdale Ins. Co. v. Liberty Mutual Ins. Co.*, No. 66706 (Nev. Dec. 16, 2014).  In that Order, the Nevada Supreme Court held that it needed "an established set of underlying facts" to rule on the questions this Court certified to it.

1

Scottsdale then filed with this Court a "Motion to Request Findings of Fact and Recertification to Nevada Supreme Court." (ECF No. 72). That Motion asks the Court to issue findings of fact under Fed. R. Civ. P. 7(b) approving 166 paragraphs of proposed fact findings presented on pp. 3-22 of Scottsdale's Motion. Scottsdale does not contend its 166 paragraphs of proposed fact findings are undisputed. Instead, it argues that "Liberty Mutual's claimed 'disputes' are merely hollow objections without evidentiary support." ECF No. 72 at 3.

Liberty Mutual filed a Response (ECF No. 74) opposing Scottsdale's Motion, contending that the majority of Scottsdale's proposed fact findings remain disputed or are not material to the central legal issue, and objecting that there is no basis for Scottsdale's proposed procedure to resolve disputed facts in the context of cross motions for summary judgment. Liberty Mutual's Response requests that the Court instead rule on its previously filed motion for summary judgment.

In Scottsdale's Reply (ECF No. 75) it again argued that its proposed fact findings should not be disputed and also requested an evidentiary hearing to resolve any factual questions.

The Court denies Scottsdale's motion to recertify because it finds there is a genuine dispute as to some of Scottsdale's proposed fact findings. The Court does not have authority to decide disputed facts in the context of cross motions for summary judgment.

Instead, the Court resolves the claims in this case by ruling on the parties' cross-motions for summary judgment.

**Cross-motions for summary judgment (ECF No. 38 and 61)**

Liberty Mutual filed a Motion for Summary Judgment dated October 18, 2013 (ECF No. 38). Scottsdale filed its own motion for partial summary judgment, and then filed an amended motion. *See* ECF No. 61 ("Amended Motion" dated March 11, 2014). The Court previously heard oral argument from counsel on those cross motions for summary judgment at a hearing on September 25, 2014. It reviewed the tape of that hearing before the August 20, 2015 hearing.

In the underlying personal injury case, a long-haul truck driver, Sandra Gresham ("Gresham"), suffered a serious leg injury when she fell in the truck wash area at a truck stop operated by Petro Stopping Centers, LP ("Petro") in Sparks, Nevada. Gresham sued Petro in federal court in Reno contending it was negligent and caused her injury. *See Gresham v. Petro Stopping*

*Centers, LP*, No. 3:09-cv-00034-RCJ-VPC (D. Nev.).  For liability claims like the Gresham claim, Petro had a $250,000 self-insured amount and two layers of excess or umbrella insurance:

| Claim amount | Source of payment |
|---|---|
| $0 to $250,000 | Self-insured amount paid by insured: Petro |
| $250,000 to $1 million | Liberty Mutual excess insurance policy |
| $1 million to $20 million | Scottsdale umbrella/excess insurance policy |

Prior to the trial in the *Gresham* case, Gresham served an Offer of Judgment on Petro offering to settle for $499,999.99, which was not accepted.  At trial, the jury returned a verdict in favor of Gresham awarding approximately $3.24 million in damages against Petro.  The jury attributed 10% comparative fault to Gresham.  Therefore, the trial judge reduced the damage award to $2.92 million and entered a judgment against Petro for that amount.  The Gresham case was settled in March 2013 while it was on appeal to the U.S. Court of Appeals for the Ninth Circuit, with payments from Petro, Liberty Mutual, and Scottsdale.

In this action, Scottsdale asserted claims for declaratory judgment and "equitable subrogation."  Scottsdale seeks to recover from Liberty Mutual all amounts that Scottsdale paid for settlement of the Gresham claim.  Liberty Mutual's Answer included a counterclaim, seeking a declaratory judgment that it does not owe anything to Scottsdale.

Scottsdale's First Cause of Action seeks a declaratory judgment holding, among other things, that Liberty Mutual assumed control of the defense of its insured, Petro, in the underlying *Gresham* personal injury case, and that Liberty Mutual is responsible for all amounts related to the *Gresham* judgment against Petro.  (ECF No. 7 at 8-9).

The Court has reviewed the Liberty Mutual excess insurance policy issued to Petro (attached to Liberty Mutual's Motion as Deposition Exhibit 101).  That insurance policy states in Section 1.d (quoted ECF No. 38 at p. 5) that Liberty Mutual did not have "the duty to defend or investigate any claim or 'suit' seeking damages to which this policy may apply."  Instead, under that insurance policy, the insured (Petro) had the duty to defend any suit.  That insurance policy provided that Liberty Mutual had the "right at any time, upon written notice to you [Petro], to assume control of the defense . . . or investigation of any claim or 'suit.'" (quoted ECF No. 38 at p. 5).  The parties have

3

not presented any evidence that Liberty Mutual ever provided written notice to Petro indicating that it intended to assume control of Petro's defense in the *Gresham* lawsuit.

The Court addresses below, in the context of Scottsdale's equitable subrogation claim, the rest of Scottsdale's request for declaratory judgment, and rejects that claim.

Scottsdale's Second Cause of Action asserts a claim for "equitable subrogation" contending that Scottsdale "is contractually and equitably subrogated to the rights of Petro" and Liberty Mutual is liable for the amounts Scottsdale paid under its umbrella insurance policy issued to Petro to resolve the Gresham claims against Petro. (ECF No. 7 at 9-10).

The parties have not identified, and the Court has not located, any Nevada cases defining the duties, if any, between a primary insurer and an excess insurer in these circumstances, or recognizing a claim for "equitable subrogation" between insurers.  The Court previously examined this question in *North American Specialty Ins. Co. v. National Fire & Marine Ins. Co.*, No. 2:10-cv-01859-GMN, 2013 WL 1332205 at *2-*3 (D. Nev. Apr. 2, 2013).  But the Court did not need to decide in that case whether Nevada recognizes a cause of action for "equitable subrogation" between insurers for the same insured.

A federal court sitting in diversity must attempt to resolve the issues before it by first looking to the "decisions of each state's highest court." *State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1418 (9th Cir. 1991); *see also Bergerud v. Progressive Cas. Ins.*, 453 F. Supp. 2d 1241, 1246 (D. Nev. 2006).  In the absence of any applicable state law, a court will "also look to well-reasoned decisions from other jurisdictions." *State Farm*, 937 F.2d at 1418.  In the end, a court "must use [its] own best judgment in predicting how the respective state supreme courts would interpret" the issue. *Id.*

Here, there are no applicable Nevada cases defining the duties between different excess insurers or excess and primary insurers, or the elements of a claim for equitable subrogation between two insurers.  The Nevada Supreme Court declined this Court's certification request.  The Court

believes that the Nevada Supreme Court would follow California law concerning these duties, if any, between insurers.[1]

California law allows primary and excess insurers to recover from one another under the theory of equitable subrogation for "their bad faith refusal to accept a reasonable settlement offer." *Am. Alt. Ins. Corp. v. Hudson Specialty Ins. Co.*, 938 F.Supp.2d 908, 916 (C.D. Cal. Apr. 3, 2013). As explained in *RLI Ins. Co. v. CNA Casualty of California*, 141 Cal. App. 4th 75, 80, 45 Cal. Rptr. 3d 667, 670-71 (Cal. App. 2006) (quotations omitted): "In the insurance context, the [equitable subrogation] doctrine permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid." Under California law: "A claim for equitable subrogation may be pursued against a primary insurer that unreasonably refuses to settle a case within its policy limits, thereby exposing its insured (or an excess insurer) to liability on the claim." *Id.* California does not allow an insurance company to recover under equitable subrogation if the insured could not recover: "It is important to emphasize, however, that the rights of the excess insurer are co-equal to those of the insured: 'Because subrogation rights are purely derivative, an insurer cannot acquire anything by subrogation to which the insured has no right and can claim no right the insured does not have.'" *Id.*

California generally views equitable subrogation as having six elements, one of which is: "the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer." *See National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.*, 171 Cal. App.4th 35, 53, 89 Cal. Rptr.3d 473, 486 (Cal App. 2009).

Here, Scottsdale has not demonstrated that the underlying insured (Petro) has an existing assignable cause of action that it could have pursued against Liberty Mutual. Therefore Scottsdale cannot stand in the shoes of Petro to assert an equitable subrogation claim against Liberty Mutual

---

[1] The Court declines to follow the Wisconsin approach, which rejects any claim between insurers for equitable subrogation. *See, e.g., Loy v. Bunderson*, 320 N.W.2d 175, 191 (Wis. 1982) (An excess insurer "contract[s] to defend and to pay any possible liability, [and] these are obligations which it alone must bear.").

here. Instead, the evidence shows that Petro could not sue Liberty Mutual because the pre-trial settlement decisions in the underlying *Gresham* case were made based on a consensus reached among Petro's defense counsel, Stephen Kent, John Kelley for Helmsman and Liberty Mutual, and Pamela Adams (an in-house lawyer for Petro).

The Court also notes that in the underlying *Gresham* case, Judge Jones of this Court already found that Petro's rejection of a $500,000 settlement offer was not unreasonable. *See* October 18, 2012 Order in *Gresham v. Petro Stopping Centers, LP*, No. 3:09-cv-00034-RCJ-VPC, (D. Nev.) (ECF No. 202 at 9) (copy attached as Exhibit 4-C to Liberty Mutual motion).

Therefore, for the reasons stated above, the Court grants Liberty Mutual's motion for summary judgment and denies Scottsdale's cross motion for partial summary judgment. Scottsdale's claims in this action are hereby dismissed with prejudice. As requested in Liberty Mutual's motion, (ECF No. 38 at 23), the Court also declares based on Liberty Mutual's Counterclaim that Liberty Mutual's sole obligation was to contribute its $750,000 policy limits to the *Gresham* settlement, and Liberty Mutual does not owe anything to Scottsdale.

The Clerk shall enter a separate written Judgment under Fed. R. Civ. P. 58(a) based on this Order: a) dismissing with prejudice all of Plaintiff's Claims, and b) granting Defendant's counterclaim for declaratory judgment as set forth in this Order.

Liberty Mutual shall file any bill of costs or motion for attorney's fees under Fed. R. Civ. P. 54(d)(2) and LR 54-16 within fourteen (14) days of the Clerk's entry of the separate written Judgment.

Dated this 3rd day of September, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court

APPROVED AS TO FORM AND CONTENT:

Dated:  September 3, 2015

CHRISTIAN, KRAVITZ, DICHTER,
JOHNSON & SLUGA, LLC

/s/ Martin J. Kravitz
_____
Martin J. Kravitz, Esq.
Gena Sluga, Esq.
Tyler Watson
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada  89123

Attorneys for Plaintiff, Scottsdale Insurance Company

| KOELLER, NEBEKER, CARLSON & HALUCK, LLP | GIBSON, DUNN & CRUTCHER LLP |
|---|---|
| /s/ Ian P. Gillan | /s/ Gregory J. Kerwin |
| Ian P. Gillan, Esq.<br>David M. Gould, Esq.<br>300 South Fourth Street, Suite 500<br>Las Vegas, NV  89101 | Gregory J. Kerwin, Esq.<br>1801 California Street, Suite 4200<br>Denver, CO  80202 |
| *Attorneys for Defendant, Liberty Mutual Insurance Company* | *Attorneys for Defendant, Liberty Mutual Insurance Company* |